UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, TRUSTEES OF THE TILE LAYERS LOCAL UNION 52 PENSION FUND, and TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND,<br><br>Plaintiffs,<br><br>-against-<br><br>STATEWIDE TILE & MARBLE, LLC and JOHN V. SKORCIK, III,<br><br>Defendants. | 20 CV _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This case is a civil action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and other applicable law, to collect delinquent employer contributions owed by Defendants to Plaintiffs, a group of multiemployer employee benefit plans, and for related relief.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this action arising under ERISA and the LMRA pursuant to 28 U.S.C. § 1331 and pursuant to Section 301(c) of the LMRA, 29 U.S.C. § 185(c), and Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3.      Venue is proper in this judicial district pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a), and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) as Plaintiffs are administered in this district.

## THE PARTIES

4.      Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Local Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Trustees of the Local Funds are fiduciaries of the Local Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Local Funds are multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37).  The Local Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

5.      Plaintiff Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "International Fund") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Trustees of the International Fund are fiduciaries of the International Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The International Fund is a multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37).  The International Fund maintains its principal place of business at 620 F Street, N.W., Washington, D.C. 20004. The Local Funds act as a collection agent for the International Fund.

6. Defendant Statewide Tile & Marble, LLC ("Statewide") is a corporation organized under the laws of the State of New York. At relevant times, Statewide was engaged in business as an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185. Statewide maintains a principal place of business at 3199 Albany Post Road, Suite 138A, Buchanan, New York 10511, with a registered agent for service of process located at 7014 13th Avenue, Suite 202, Brooklyn, New York.

7. Defendant John V. Skorcik, III ("Skorcik") is the principal and owner of Statewide. He resides at 110 Northmore Drive, Yorktown Heights, New York 10598.

## FACTUAL ALLEGATIONS

**Statewide's Obligations under its Collective Bargaining Agreement**

8. The Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union") is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the LMRA, 29 U.S.C. § 142.

9. At all times relevant hereto, Statewide was and is bound to a collective bargaining agreement (the "CBA") with the Union.

10. The CBA requires Statewide, as a signatory employer to the CBA, to remit specified hourly contributions to the Local Funds and the International Fund, and various entities on whose behalf they act as collection agents pursuant to the CBA (collectively, the "Funds"), in connection with all work performed by Defendant Statewide's employees in the trade and geographical jurisdiction of the Union ("Covered Work").

11. Under the CBA and the Funds' policies for the collection of contributions ("Collection Policy"), which are incorporated by reference in the CBA, if an employer does not remit its required contributions to the Funds by the 15th day of the month that follows the month in which the employer's employees performed Covered Work, then the employer is delinquent in its contribution obligation under the CBA and the Collection Policy.

12. In the event that an employer bound by the CBA, like Defendant Statewide, is delinquent in its contributions to the Funds, then, pursuant to the CBA and the Funds' Collection Policy, the Funds are entitled to payment of the unpaid contributions, interest on contributions owed to the Local Funds at a rate of ten percent (10%) *per annum*, interest on contributions owed to the International Fund at fifteen percent (15%) *per annum*, liquidated damages in the amount of twenty percent (20%) of the unpaid contributions, the Funds' audit costs, and the Funds' attorneys' fees and costs incurred in obtaining these amounts from the delinquent employer.

13. In addition, the CBA provides that Statewide must furnish the Funds, or their representatives, with its books and records available permit the Funds to verify the number of hours of Covered Work performed by Statewide's employees.

**Statewide's Delinquent Benefit Contributions Owed to the Funds**

14. On October 18, 2018, representatives of the Funds completed a payroll audit of Defendant Statewide's books and records ("Audit I") covering the period from January 5, 2016 through December 31, 2017 (the "Audit I Period").

15. Audit I revealed that Statewide owed a total delinquency of $122,948.96 to Plaintiffs, consisting of: (1) delinquent contributions in the principal amount of $81,573.13; (2) interest of $24,460.78; (3) liquidated damages of $14,355.05; and (4) audit costs of $2,560.00.

16. Since the Funds issued Audit I on October 18, 2018, additional interest of $19,809.32 has accrued on the delinquent contributions identified in Audit I.

17. On July 16, 2019, representatives of the Funds completed a payroll audit of Defendant Statewide's books and records ("Audit II," together with Audit I, the "Audits") covering the period from January 1, 2018 through December 31, 2018 (the "Audit II Period").

18. Audit II revealed that Statewide owed a total delinquency of $44,982.84 to Plaintiffs, consisting of: (1) delinquent contributions in the principal amount of $32,273.78; (2) interest of $5,725.01; (3) liquidated damages of $5,704.05; and (4) audit costs of $1,280.00.

19. Since the Funds issued Audit II on July 16, 2019, additional interest of $3,393.97 has accrued on the delinquent contributions identified in Audit II.

20. Overall, as of May 19, 2020, the Audits identify a total delinquency owed to Plaintiffs of $191,135.09, consisting of: (1) delinquent contributions in the principal amount of $113,846.91; (2) interest of $53,389.08; (3) liquidated damages of $20,059.10 and (4) audit costs of $3,840.00.

21. Statewide has not paid the Funds for any of the delinquency identified in the Audits, despite demand for the same by the Funds.

22. In addition to the delinquency identified in the Audits, Defendant Statewide, based on its reports of Covered Work, has failed to remit contributions to the Funds for Covered Work performed by Statewide's employees during the period of February 4, 2019 through February 15, 2020 in the principal amount of $93,295.92 (the "Reported Delinquency").

23. Pursuant to the CBA and Collection Policy, as a result of the Reported Delinquency, Defendant Statewide owes the Funds interest thereon in an amount to be determined, liquidated

-5-

damages in the amount of $18,659.18, and the Funds' attorneys' and costs incurred in collecting said sums.

24. Despite demand for payment of the Reported Delinquency, Defendant Statewide has not paid any monies towards said delinquency or the damages arising therefrom.

25. Therefore, pursuant to the Audits, the Reported Delinquency, the CBA, and the Collection Policy, Defendant Statewide owes the Funds the sum of $303,090.19, plus interest and the Funds' attorneys' fees and costs, including audit costs, incurred in collecting said sums.

**Skorcik's Abuse of Statewide's Corporate Form Warrants the Piercing of the Corporate Veil**

26. Skorcik is the owner and president of Statewide.

27. Skorcik signed Statewide's CBA with the Union, which conferred benefits onto Skorcik and his company, Statewide, such as medical insurance coverage.

28. In signing the CBA, Skorcik represented that Statewide would comply with the obligations of the CBA.

29. Skorcik is also a member of the Union who receives benefits under the CBA.

30. At Statewide, Skorcik pays himself a salary and an hourly wage, which is equal to the wage rate set forth in the relevant CBA.

31. Skorcik received benefits from the Funds as while acting as the owner and president of Statewide, including health insurance coverage.

32. The Funds provided Skorcik and his company with benefits coverage, such as health insurance coverage, based on Skorcik's representation that Statewide would satisfy its benefit contribution obligation to the Funds.

33. Skorcik accepted the CBA's benefits that the Funds conferred on him personally and on his company, Statewide.

34. Neither Skorcik nor Statewide has remitted contributions on behalf of Skorcik despite his acceptance and usage of the benefits, personally, conferred to him under the CBA by the Funds.

35. Skorcik owes the Funds delinquent contributions of at least $65,994.88 on behalf of himself, in his personal capacity, as revealed in the Audits and in the Reported Delinquency.

36. Therefore, Skorcik signed the CBA with the Union to obtain supplemental benefits, including medical coverage, for him, personally, and his company, Defendant Statewide, without any intention of fully paying the Funds for said benefits.

37. Instead of directing Statewide to pay its delinquent benefit contributions to the Funds, even though such benefits have been conferred on Skorcik, personally, and on his company, Statewide, Skorcik is preparing to render Statewide devoid of assets with the aim of frustrating any judgment that the Funds might obtain against Statewide under ERISA or the LMRA.

38. Skorcik is using his dominance and control over Statewide to escape his company's obligations under the CBA, even though he, personally, and his company received the CBA's at no cost for Skorcik based on his fraudulent representation to the Funds that he and Statewide would comply with the CBA.

39. Skorcik has used Statewide to defraud the Funds of their benefit contributions and to serve his personal interest of obtaining benefits for himself without having to pay for them and without any exposure to personal liability.

40. Such use of a corporation justifies the piercing of the corporate veil and holding Defendant Skorcik personally liable for Defendant Statewide's corporate liabilities to the Funds under ERISA and the LMRA.

## THE FUNDS' FIRST CAUSE OF ACTION AGAINST DEFENDANT STATEWIDE
(*Violation of ERISA*)

41. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

42. Section 515 of ERISA provides that "[e]very employer who is obligated to remit contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

43. At all relevant times, Defendant Statewide was and is party to the CBA with the Union.

44. The relevant CBA requires Defendant Statewide to make specified hourly contributions to the Funds in connection with all Covered Work.

45. Defendant Statewide violated Section 515 of ERISA, 29 U.S.C. § 1145, by failing to remit required contributions to the Funds, in contravention of the CBA and the Funds' Collection Policy, for its employees' Covered Work during the time period of the Audits and the Reported Delinquency in the principal amount of at least $207,142.83, plus any additional delinquent contributions identified during this lawsuit.

46. Accordingly, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, the CBA, and the Funds' Collection Policy, Defendant Statewide is liable to the Funds in an amount equal to at least $207,142.83 in delinquent contributions, plus any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs, including audit costs, incurred by the Funds in collecting these amounts.

## THE FUNDS' SECOND CAUSE OF ACTION AGAINST DEFENDANT STATEWIDE
(*Violation of LMRA*)

47. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48. The relevant CBA required Defendant Statewide to make specified hourly contributions to the Funds in connection with all Covered Work.

49. Section 301 of the LMRA, 29 U.S.C. § 185, allows courts to enforce labor contracts, including the CBA at issue here.

50. Defendant Statewide violated the CBA by failing to remit required contributions to the Funds for its employees' Covered Work on during the periods of the Audits and the Reported Delinquency in the principal amount of at least $207,142.83.

51. Under the CBA and the Funds' Collection Policy, if Statewide is delinquent in its contributions to the Funds, then the Funds are entitled to payment of the unpaid contributions, interest on contributions owed to the Local Funds at a rate of ten percent (10%) *per annum*, interest on contributions owed to the International Fund at fifteen percent (15%) *per annum*, liquidated damages in the amount of twenty percent (20%) of the unpaid contributions, and the Funds' attorneys' fees and costs, including audit costs, incurred in obtaining these amounts from the delinquent employer, Defendant Statewide.

52. Accordingly, pursuant to the CBA, the Funds' Collection Policy, and Section 301 of the LMRA, 29 U.S.C. § 185, Defendant Statewide is liable to the Funds in an amount equal to at least $207,142.83 in delinquent contributions, plus any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs, including audit costs, incurred by the Funds in collecting these amounts.

## THE FUNDS' THIRD CAUSE OF ACTION AGAINST DEFENDANT SKORCIK
*(Individual Liability - Piercing the Corporate Veil)*

53. A controlling corporate official who defrauds or conspires to defraud a benefit fund of required contributions is liable in his or her individual capacity.

54. A controlling corporate officer that uses a corporation to serve his or her personal interests is not entitled to protection from corporate liabilities.

55. At all relevant times, Skorcik was the owner, operator, and chief executive officer of Statewide.

56. Skorcik represented to the Funds that he would cause his company to comply with the terms of the CBA in exchange for the benefits conferred under the CBA, including health insurance coverage.

57. Skorcik personally availed himself of the benefits under the CBA, including health insurance coverage.

58. Skorcik never intended to pay his own contributions to the Funds while accepting the benefits from the Funds.

59. Neither Skorcik nor his company, Statewide, remitted contributions on Skorcik's behalf to the Funds.

60. As a result of Skorcik's fraudulent representation that he would comply with the CBA, the Funds conferred benefits on Skorcik and his company.

61. To date, Skorcik has not paid benefits for himself or for the majority of his employees' hours of Covered Work.

62. Meanwhile, Skorcik and his employees are receiving benefits, including medical insurance coverage.

63. Skorcik has refused, for years, to direct his company to pay the delinquent contributions to the Funds.

64. As a result of Skorcik's refusal, other employers that participate in the multiemployer employee benefit plans of the Funds have had to bear more than their fair share of the plan, threatening the sustainability of said multiemployer employee benefit plans, which is contrary to Congressional policy underlying ERISA.

65. Skorcik is also removing all assets from Statewide to frustrate the enforcement of any judgment that the Funds might obtain against Statewide under ERISA or the LMRA.

66. By rendering Statewide devoid of assets and, effectively, judgment proof, Skorcik is abusing Statewide's corporate form to protect him from paying for the benefits that he personally received from the Funds and for damages resulting from his scheme to fraudulently induce the Funds into providing benefits to his company under his false representation that Skorcik intended to cause his company, Statewide, to comply with the CBA.

67. Thus, Skorcik, using his company for personal gain, fraudulently induced the Funds into providing benefits to him and his company, accepted those benefits personally, including health insurance coverage, and, all the while, never intended to pay for said benefits.

68. Moreover, Skorcik is trying to escape liability for defrauding the Funds by rendering Statewide judgment proof at the expense of other contributing employers to the multiemployer plans and threatening the viability of said plans.

69. Therefore, Skorcik has used his company, Statewide, to facilitate his fraud on the Funds and to serve his personal interests of obtaining free medical insurance and other benefits while insulating himself from the consequence of not paying for said benefits by rendering

Statewide devoid of assets, aiming to frustrate the enforcement of any judgment the Funds might obtain under ERISA or the LMRA.

70. Accordingly, Defendant Skorcik, under the doctrine of piercing the corporate veil, is not entitled to protection from Statewide's corporate structure.

71. As a result, Defendant Skorcik is personally and coextensively liable with Defendant Statewide for all damages in this lawsuit.

## DEMAND FOR JURY TRIAL

72. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Funds demand trial by jury in this action of all issues so triable.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

(1) Declare Defendant Statewide Tile & Marble, LLC and Defendant John V. Skorcik, III to be joint and severally liable for all damages awarded to Plaintiffs in this litigation, on account of the piercing of the corporate veil;

(2) Award judgment to Plaintiffs against Defendants, joint and severally, for all delinquent contributions identified in this lawsuit, including the delinquent contributions of $207,142.83 identified in the Audits and in the Reported Delinquency, plus interest, liquidated damages, and audit costs;

(3) Award Plaintiffs all reasonable attorneys' fees, expenses, and costs that they incur in prosecuting this suit; and

(4) Award Plaintiffs such other and further relief as is just and proper.


Dated: New York, New York   Respectfully submitted,
       May 19, 2020
                                  **VIRGINIA & AMBINDER, LLP**

                           By:    ___/s/ *John M. Harras*_____

                                        John M. Harras, Esq.
                                        40 Broad Street, 7th Floor
                                        New York, New York 10004
                                        (212) 943-9080
                                        *Attorneys for Plaintiffs*